IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BENNY EARL YAUGER, JR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-02394-RJD |
| | ) | |
| DAN SPROUL, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM and ORDER**

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on Petitioner Benny Earl Yauger, Jr.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1). At the time Yauger filed this petition, he was in the custody of the Bureau of Prisons ("BOP") at a facility in Marion, Illinois.[2] For the reasons explained below, his petition is **DENIED**, and this case is **DISMISSED with prejudice**.

**Background**

At the time of the petition, Yauger was serving a 90-month term of imprisonment, with 36 months of supervised release, following his prosecution in the Northern District of Alabama for the offense of Possession of a Firearm by a Felon. (Doc. 17-1, p. 3; *see also United States v.*

---

[1] This case was assigned to the undersigned for final disposition upon the parties' full consent pursuant to 28 U.S.C. § 636(c). (Doc. 11).

[2] Yauger advised the Court that on July 16, 2025, he was transferred to a residential reentry center in Tupelo, Mississippi. (Doc. 24). It appears that on September 12, 2025, Yauger was released from BOP's custody. *See* https://www.bop.gov/inmateloc/ (last visited on May 28, 2026). Because Yauger was sentenced to 36 months of supervised release, his release from BOP custody does not render this case moot. *See Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018) ("[w]hen a former inmate still serving a term of supervised release challenges the length or computation of his sentence, his case is not moot so long as he could obtain 'any potential benefit' from a favorable decision.").

*Yauger*, ND Ala. 20-CR-305-LSC-SGC-1 (Crim. Doc. 21, 44 at 41)). His projected release date was September 13, 2026. (Doc. 17-1, p. 3). In his petition, Yauger abstractly argued that he earned 420 First Step Act ("FSA") time credits that were not applied to his sentence and that he was never informed of the reasons his time credits were taken or how to correct that issue. (*See* Doc. 1, p. 6; Doc. 6, p. 2). He stated that he was challenging BOP's interpretation of the FSA and Federal Time Credits ("FTC"). (Doc. 1, p. 2). He did not provide any additional factual details or argue that he was unjustly deprived of the opportunity to accrue additional time credit. (Doc. 1).

Respondent argued in response that Yauger's FSA time had been accurately calculated and that he had received the credits that he was entitled to under 18 U.S.C. § 3632(d). (Doc. 17). Respondent pointed to the record showing that Yauger had been in "accrual" status, meaning status under which he was entitled to earn time credits under the FSA, for 872 days, and he had been in "decline" or "disallowance" status, under which he could not accrue time credits, for a total of 242 days. (Docs. 17-1; 17-5, p. 1). Specifically, the record shows that Yauger was in a decline status for the stated reasons during the following time periods:

| Dates | Reason |
|---|---|
| 6/14/2022 – 10/3/2022: | Refusal to participate in Financial Responsibility Program[3] |
| 7/6/2022 – 8/4/2022: | Placed in disciplinary segregation |
| 9/8/2022 – 9/9/2022: | In-transit and on holdover status due to institutional transfer |
| 8/31/2023 – 1/9/2024: | Refusal to participate in Drug Education Programming Activity |

---

[3] Under the Financial Responsibility Program ("FRP"), inmates are responsible for making satisfactory progress in meeting their financial responsibility plan, including paying special assessments imposed at sentencing pursuant to 28 U.S.C. 3013, and for providing documentation of payments to staff. 28 C.F.R. § 545.11(b).

Yauger was assigned a Financial Responsibility Plan and began participating in the same on March 16, 2022. Respondent represented that on June 14, 2022, Yauger refused to participate in his FRP until October 3, 2022. As indicated in Petitioner's FSA Time Credit Assessment, from June 14, 2022, through October 3, 2022, Petitioner was in "disallowed" status for purposes of FTCs and did not earn time credits.

Further, Respondent explained that Yauger was placed on the waitlist for Drug Education on August 31, 2023. Respondent represented that Yauger failed to show up to his "call out" to attend Drug Education on November 13, 2023, and was placed in "decline" status on that date. *Id.* Yauger was again placed on the waitlist for Drug Education on January 9, 2024, and his decline status was therefore removed for purposes of earning FTCs. *Id.* He completed Drug Education on September 24, 2024. *Id*. Accordingly, Yauger was in "decline status" and was not accruing FTCs for 131 days, from August 31, 2023, the date on which he was put on the waitlist for Drug Education, and subsequently declined the same, to January 9, 2024, the date on which he was again placed on the waitlist for Drug Education.

In his reply, for the first time, Yauger countered that BOP improperly placed him in non-accrual status for the period between June 14, 2022, and October 3, 2022, because he never refused to participate in the FRP. (Doc. 21, pp. 2-3). He argued that the BOP facility where he was housed immediately before his transfer to FCI Marion improperly placed him in a refusal status because he had insufficient funds to make a payment required by his FRP. He further represented that he did not receive advance notice that the payment was due, and that, in any case, he fully paid the amount due soon after his transfer to FCI Marion. He attached to his reply a document titled "FSA Recidivism Risk Assessment," reflecting his "PATTERN Worksheet Summary" as of

October 4, 2022, showing a "False" value for "FRP Refuse." (Doc. 21, p. 8). He also argued that he should not have been placed on decline status between August 31, 2023, and January 9, 2024, for not participating in the Drug Education Program because he never received notice of being enrolled in it. (Doc. 21, pp. 3-4). He faulted the BOP's notification systems.

## Discussion

A writ of habeas corpus may be granted if an inmate "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (c)(3). A federal inmate may challenge the application of potential sentence credits in the calculation of his sentence in a § 2241 petition. *Setser v. United States*, 566 U.S. 231, 244, 132 S. Ct. 1463, 182 L. Ed. 2d 455 (2012). However, a prisoner does not have a "'constitutional or inherent right'" to be released before completing a valid sentence. *See Haynes v. Lillard*, No. 23-CV-1051-SMY, 2023 WL 7387264, at *2 (S.D. Ill. Oct. 10, 2023) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)). Further, no constitutionally protected interest is implicated when a statute does not impose any "'substantive limitations on official discretion'" to grant early release. *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983)).

The FSA enacted on December 21, 2018, directs the BOP to take specific actions regarding inmate programming and time credits. The FSA delegated to the Attorney General the authority to develop "a risk and needs assessment system" to "determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism[.]" 18 U.S.C. § 3632(a)(1). This assessment system is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious

misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release. See 18 U.S.C. § 3632(a).

The FSA allows eligible inmates to earn time credits toward prerelease custody or transfer to supervised release for participating in EBRR programs or PAs. Relevantly, it provides:

> **(A) In general.** -- A prisoner, except for an ineligible prisoner under subparagraph (D), who *successfully completes* evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > **i)** A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> >
> > **(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A)(i)-(ii) (emphasis added).

An inmate earns First Step Act time credits ("FTCs") only while in earning status. An inmate is not in earning status if he fails to "successfully complete" EBRRs or PAs, 18 U.S.C. § 3632(d)(4)(A), or if his offense bars him from earning FTCs. 18 U.S.C. § 3632(d)(4)(D).

Relevant to the issue here, "successful participation" requires a determination by BOP staff that an eligible inmate has participated in the EBRR programs or PAs that were recommended

based on the inmate's individualized risk and needs assessment. Pursuant to BOP Program Statement 5410.01 CN-2: First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), an inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Inmates who later refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist will be considered to be in "decline," or opt-out status, for the entire time they were on the waitlist. (Doc. 17-1). Inmates who decline to participate in other required programs, such as the FRP, will also not earn FTCs. *Id.* at 15. Moreover, pursuant to 28 C.F.R. § 523.41(c)(4)(ii), an otherwise eligible inmate will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations that include designation status outside the institution. *Id.*

Here, Yauger argued for the first time in his reply that he was improperly placed in refusal status and was unjustly deprived of the opportunity to accrue FSA time credits between June 14, 2022, and October 3, 2022, and between August 31, 2023, and September 9, 2024. The Court first notes that Yauger arguably waived this argument by raising it for the first time in his reply brief and failing to include any related factual allegations in his petition. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (citing *Simpson v. Office of the Chief Judge of Will County,* 559 F.3d 706, 719 (7th Cir. 2009)) (arguments made for the first time in habeas petitioner's reply brief are waived). The only issue Yauger raised in his petition was whether the time credits he had already accrued under the First Step Act were properly applied to his current sentence of imprisonment. (*See* Doc. 1, pp. 2-3, Doc. 6, p. 2). This is a separate issue from the improper placement in refusal status that he asserted in his reply. The distinction is important because Respondent was

effectively deprived of an opportunity to respond and raise any defenses, including the issue of exhaustion of administrative remedies, as to that specific matter.

Even setting aside the waiver issue, Yauger's arguments still fail. As stated above, he argued that the BOP facility where he was housed immediately before his transfer to Marion improperly placed him in a refusal status because (a) he had insufficient funds to make a payment required by his Financial Responsibility Plan, (b) he did not receive advance notice that the payment was due, and (c) fully paid the amount due soon after his transfer to FCI Marion. He attached to his reply a document titled "FSA Recidivism Risk Assessment," reflecting his PATTERN Worksheet Summary as of October 4, 2022, showing a "False" value for "FRP Refuse." However, the provided exhibit only indicates that he was not in a refusal status as of October 4, 2022; it does not prove his compliance with his Financial Responsibility Plan during the relevant period from June 14, 2022, to October 3, 2022, as reflected in the record provided by Respondent. Further, Yauger does not explain the type of payment at issue or why any lack of advance notice rendered BOP's finding of non-compliance with his Financial Responsibility Plan improper. Without more, the Court cannot find that BOP improperly placed him in refusal status for his non-compliance with his Financial Responsibility Plan from June 14, 2022, to October 3, 2022.

Yauger's challenge as to his placement in refusal status between August 31, 2023, and September 9, 2024, also lacks merit. Yauger argued that he should have been allowed to accrue FSA time credits during that time because his failure to participate in the Drug Education Programming Activity was attributable to the facility's inadequate notice of his enrollment in the program. Even if that were the case, however, Yauger would still not be entitled to the requested

relief because he did not "successfully complete[]" the program, a prerequisite for accruing PSA time credits. *See* 18 U.S.C. § 3632(d)(4)(A)(a prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows . . . .").

The Court notes that, in any case, Yauger does not have a constitutionally protected liberty interest in his early release under the FSA cognizable in a § 2241 petition. As Chief District Judge Staci M. Yandle explained in *Haynes*, "[b]ecause the FSA gives the Attorney General official discretion in assessing inmates' recidivism risk level under PATTERN," and because FSA credits are not statutorily mandated but rather "contingent on numerous factors, including PATTERN scores," inmates do not have a constitutionally protected liberty interest" in their early release under the FSA. *Haynes*, 2023 WL 7387264, at *2 (citation omitted); *see also United States v. Walker*, 917 F.3d 989, 990 (7th Cir. 2019) ("Congress has committed the responsibility for the calculation of credit for pretrial confinement to the BOP"); *Haynes v. Williams*, No. 23-CV-01348-SPM, 2023 WL 7553849, at *3 (S.D. Ill. Nov. 14, 2023) (concluding that the federal inmate did not have a constitutionally protected liberty interest cognizable in a § 2241 petition as to his entitlement to FSA time credit because unlike "state statute-mandated time credits," "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison."). Accordingly, Yauger is not entitled to the requested relief.

## Conclusion

For these reasons, the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED,** and this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days after the entry of the judgment. Fed. R. App. P. 4(a)(1)(B). If Petitioner chooses to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). If Petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

**IT IS SO ORDERED.**

**DATED: May 28, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**